## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| In re: | : | Chapter 7 |
| | : | |
| ADVANCED INTERACTIVE SYSTEMS, | : | Case No. 13-10517 (MFW) |
| INC., *et al.*,[1] | : | |
| | : | (Jointly Administered) |
| Debtors. | : | |
| | : | **Preliminary Hearing Date: To be determined** |
| | : | **Preliminary Objection Deadline: At Hearing** |
| | : | **Final Hearing Date: To be determined** |
| | : | **Final Objection Deadline: To be determined** |

**CHAPTER 7 TRUSTEE'S MOTION FOR ENTRY OF INTERIM AND FINAL ORDERS
(I) AUTHORIZING HIM TO USE CASH COLLATERAL AND GRANTING
ADEQUATE PROTECTION; (II) AUTHORIZING HIM TO OBTAIN SECURED
POSTPETITION FINANCING ON SUPERPRIORITY BASIS; (III) APPROVING
SHARING ARRANGEMENT; AND (IV) GRANTING RELATED RELIEF**

Jeoffrey L. Burtch, as chapter 7 trustee (the "Chapter 7 Trustee") for the estates (the

"Estates") of the above-captioned debtors (the "Debtors"), moves (this "Motion") for entry of an

interim order (the "Interim Order"), and then, after a final hearing on this Motion (the "Final

Hearing"), a final order (the "Final Order"): (I) authorizing him to use Cash Collateral (as

defined below) and granting adequate protection to the Prepetition Secured Parties (as defined

below); (II) authorizing him to obtain secured post-petition financing on a superpriority basis;

(III) approving a certain sharing arrangement; and (IV) granting related relief.  In support of this

Motion, the Chapter 7 Trustee states:

### Jurisdiction, core nature, and venue

1.      The United States Bankruptcy Court for the District of Delaware (the "Court")

has jurisdiction to consider this matter pursuant to 28 U.S.C. §1334.  This matter is a core

---

[1]The Debtors in these proceedings are:  Advanced Interactive Systems, Inc., Reality by Design, Inc., FS Systems, Inc. and SRI Acquisition Corp.

proceeding within the meaning of 28 U.S.C. §157(b)(2).  Venue is proper pursuant to 28 U.S.C. §§1408 and 1409.

## Background

2.    On March 14, 2013 (the "Petition Date"), the Debtors commenced these bankruptcy cases by filing voluntary petitions for relief under chapter 7 of the Bankruptcy Code. Shortly afterward, the Chapter 7 Trustee was appointed.  A meeting of creditors pursuant to 11 U.S.C. §341 is scheduled for April 10, 2013.

### A.    The Debtors' prepetition structure and business operations

3.    Debtor Advanced Interactive Systems, Inc. owns 100% of the equity of each of the other Debtors, and also owns 100% of the equity in three foreign non-debtor subsidiaries: Advanced Interactive Systems Pte. Ltd., based in Singapore; Nitor Far East Sdn Bhd, based in Malaysia; and Advanced Interactive Systems Ltd., based in the United Kingdom (the "Foreign Subsidiaries").  The Debtors were headquartered in Seattle, Washington, and operated facilities in Las Vegas, Nevada, and in Orlando and Melbourne, Florida.

4.    The Debtors are no longer operating.  Prior to the Petition Date, the Debtors designed, manufactured, and sold products for use in training military, law enforcement, and similar types of personnel, and provided related support services.  The Debtors' products fall into three major divisions: virtual simulation; live fire modular ranges; and facilities.

5.    The Debtors' "virtual simulation" products create artificial "virtual reality" environments, in which trainees are immersed in "virtual" (i.e. simulated) combat scenarios. Using high quality video and three dimensional game-quality computer generated graphics, these artificial environments provide a highly realistic experience, in which trainees use laser-based

LEGAL\1557232517

weapons, and practice skills such as marksmanship, reacting to virtual return fire, and making "shoot/don't shoot" judgments. The Debtors' virtual simulation products can be easily installed at any sort of facility or location, including fixed facilities and mobile enclosures, and customers can create customized training scenarios in order to meet their individual needs.

6.      The Debtors' "live fire modular range" products are essentially prefabricated shooting ranges, designed for use with all types of small arms. The standard configuration consists of two shooting lanes built inside a prefabricated container. However, these shooting ranges can be customized to meet individual training needs, and can be made to contain twenty-four or more shooting lanes, and be anywhere from forty to one-hundred twenty or more feet in length, making them suitable for all manner of training needs. In addition, the Debtor's shooting ranges can be integrated with the Debtors' "virtual simulation" technology, to add training elements such as "shoot/don't shoot" decision-making, simulated live return fire, and automated shooter scoring.

7.      The Debtors' "facilities" products consist of actual physical training grounds that the Debtors designed, built, and maintained. These training grounds can be designed to meet customers' specific needs. For example, a counter-terrorism training facility may include an artificial "airport," complete with a mock-up of an airplane, hangar, and runway. An urban police force training facility may include mock-ups of closely spaced buildings, ideal for training in close-quarters fighting. As with its shooting ranges, the Debtors' training facilities can be integrated with the Debtors' "virtual simulation" technology according to customers' particular needs.

8.      The Debtors have designed, built, and maintained some of the world's premier training complexes. Their customers include: branches of the United States military including

3

the Army, Navy, Air Force, and Special Operations Command; foreign militaries including those

from the United Kingdom, Canada, Singapore, and the United Arab Emirates; and numerous

domestic and foreign governmental and law enforcement agencies, including the U.S. Marshals,

the Federal Law Enforcement Training Center, the U.S. Customs and Border Patrol, the U.S.

State Department, the Royal Canadian Mounted Police, the Canadian Military Police, the

Singapore Police, the UAE Police, and the King Abdullah Special Operations Training Center in

Jordan.

**B.     The Debtors' prepetition indebtedness, and the Chapter 7 Trustee's need to use cash
collateral and obtain post-petition financing**

9.      The Debtors are parties to that certain Securities Purchase Agreement, dated as of

August 9, 2010, by and among Advanced Interactive Systems, Inc., Kayne Anderson Mezzanine

Partners (QP), LP, Kayne Anderson Mezzanine Partners, LP, KAMPO US, LP as note

purchasers (collectively, in such capacities, the "Prepetition Lenders"), Kayne Anderson

Mezzanine Partners (QP), as collateral agent (in such capacity, the "Prepetition Agent" and

together with the Prepetition Lenders, the "Prepetition Secured Parties"), and the other parties

party thereto (as amended, modified and supplemented as of the date hereof, the "Prepetition

Facility" and together with all Note Documents (as defined in the Prepetition Facility) and all

other agreements and documents relating thereto and executed prior to the Petition Date (in each

case, as amended, restated, supplemented or otherwise modified from time to time), collectively,

the "Prepetition Credit Documents"). The Prepetition Secured Parties assert liens on

substantially all of the Debtors' prepetition assets, with the exception of 35% of the Debtors'

interests in the Foreign Subsidiaries (to the extent that the Prepetition Secured Parties' interests

are validly perfected, the "Prepetition Collateral") securing the Obligations (as defined in the

4

Prepetition Facility) (the "Prepetition Obligations"). The Chapter 7 Trustee believes that the amount of the Prepetition Obligations exceeds the value of the Estates' assets.

10.    As of the Petition Date, the Debtors had less than $1,000 in their bank accounts. The Chapter 7 Trustee has reached an agreement to sell certain inventory to Ueland, LLC, subject to Court approval, for approximately $77,000. In addition, the Chapter 7 Trustee expects to collect funds from certain accounts receivable held by the Estates. To the extent that the Prepetition Secured Parties' interests are properly perfected, then any cash (or cash equivalents) that the Estates come to possess from the foregoing would constitute cash collateral of the Prepetition Secured Parties (the "Cash Collateral"). In short, the Chapter 7 Trustee would have no unencumbered cash available to administer these cases (at least, not until he is able to sell the Foreign Subsidiaries).[2]

11.    The Chapter 7 Trustee is preparing to market and ultimately sell substantially all of the Estates' assets (the "Sale Process"), and expects to file a motion in the near future to implement the Sale Process. However, with no unencumbered funds, he has no means to pay for the costs associated with the Sale Process. Not only is the Trustee unable to cover the costs to begin the Sale Process, but at present he has no ability to pay for even the basic costs associated with storing the Debtors' assets and administering the Estates. Consequently, the Chapter 7 Trustee urgently needs access to funds in order to prevent irreparable harm to the Estates' assets.

12. After arm's length negotiations, the Chapter 7 Trustee and the Prepetition Secured Parties have agreed that the Chapter 7 Trustee may use the Cash Collateral under the terms and conditions set out in the proposed Interim and Final Orders and attachments thereto (the "Cash

---

[2] Subject to the terms of the Interim and Final Orders, the Chapter 7 Trustee reserves all rights to challenge the Prepetition Secured Parties' asserted perfected status.

LEGAL\15572325\7

Collateral Arrangement"), copies of which are attached to this Motion and incorporated herein by reference.

13.     The Chapter 7 Trustee expects that he will need additional funds beyond the Cash Collateral in order to complete the Sale Process and fully administer the Estates.  Accordingly, following arm's length negotiation, he has arranged for up to $320,000 in postpetition financing (the "Postpetition Financing") to be provided by Kayne Anderson Mezzanine Partners (QP), L.P, Kayne Anderson Mezzanine Partners, L.P., and KAMPO US, L.P. (in such capacities, the "Postpetition Lenders"), which are also the Prepetition Secured Parties.  The terms and conditions of the Chapter 7 Trustee's financing arrangement with the Postpetition Lenders (the "Postpetition Credit Facility") are set out in the proposed Interim and Final Orders and attachments thereto.

14.     In addition, following arm's length negotiations, the Chapter 7 Trustee has reached an agreement with the Prepetition Lenders and the Postpetition Lenders regarding apportionment of the proceeds (the "Sale Proceeds") ultimately realized at the conclusion of the Sale Process from the Prepetition Collateral, the Foreign Subsidiaries, and from unencumbered assets (the "Sharing Arrangement"), which Sharing Arrangement is a critical component of the proposed financing.  The terms and conditions of the Sharing Arrangement are set out in the proposed Interim and Final Orders and attachments thereto.

## **Summary of Relief Requested**

15.     The Chapter 7 Trustee seeks entry of the Interim and then, after the Final Hearing, the Final Order, each of which, *inter alia*:

   a.     authorizes the Chapter 7 Trustee to use the Cash Collateral pursuant to the terms of the Cash Collateral Arrangement;

6

b.  authorizes the Chapter 7 Trustee to obtain Postpetition Financing pursuant to the terms of the Postpetition Credit Facility;

c.  approves the Sharing Arrangement; and

d.  grants related relief.

16.  In addition, the Chapter 7 Trustee requests that the Court: (i) schedule a Final Hearing, pursuant to Federal Rule of Bankruptcy Procedure 4001, to consider entry of the Final Order; and (ii) approve the Chapter 7 Trustee's proposed notice procedures with respect to the Final Hearing.

17.  By a separate Motion to Shorten, filed concurrently with this Motion, the Chapter 7 Trustee is requesting that the Court schedule an expedited preliminary hearing on April 10, 2013 at 2:00 p.m. (ET), or as soon thereafter as reasonably possible, for consideration of the attached Interim Order.

**Basis for Relief**

A.  **The Cash Collateral Arrangement should be approved**

1.  **Overview of the Cash Collateral Arrangement**

18.  Pursuant to the Cash Collateral Arrangement, the Chapter 7 Trustee would have the right to use the Cash Collateral in a manner consistent with the terms of the Approved Budget (as defined below), the Postpetition Credit Facility (as defined below), and the applicable terms of the Interim and Final Orders.

19.  The Interim and Final Orders explicitly provide the following restrictions, "The Chapter 7 Trustee shall not use any proceeds of the Postpetition Credit Facility or Cash Collateral to pay any administrative expense claims arising under section 503(b)(9) of the Bankruptcy Code or any pre-petition unsecured claims (including pre-petition priority unsecured

7

claims), in each case whether pursuant to section 105, 363, 365 or any other provision of the

Bankruptcy Code or otherwise." Interim Order at ¶ 5.

20. As set out in the term sheet attached to and incorporated into the Interim and Final

Orders, the following constitute events of default ("Events of Default"):

- Noncompliance with Approved Budget [as defined below]- Expenses incurred in any calendar month are 10% greater, on an aggregate basis, than the amount budgeted for such month; provided that the excess of the amount of any budgeted expenses in one line item over the amount of actual payments for such line item for the applicable month may be carried forward for use in future months for such line item.

- Failure to satisfy any of the Milestones [as defined in the term sheet] or Reporting [as defined in the term sheet].

- Failure to pay any amount when due, including principal, interest, fees and Indemnity obligations.

- Dismissal of any of the Debtors' chapter 7 cases.

- Default or noncompliance with the terms of any order approving the Postpetition Financing.

- Entry of any order modifying, reversing, revoking, staying, rescinding, vacating or amending the Interim Order or the Final Order without the express prior written consent of the [Postpetition Lenders].

- The Interim Order shall not have been replaced by a Final Order acceptable to the [Postpetition Lenders] in their sole discretion within thirty (30) days of entry of the Interim Order.

- Proposal or approval of any sale of assets of the Debtors that is not acceptable to the [Postpetition Lenders].

- Any provision of the documents relating to the Postpetition Financing shall cease to be valid, binding and enforceable on the Debtors, or any Debtor or the Trustee shall so assert in any pleading filed in any court.

- The Debtors or Trustee shall seek to obtain financing or use of cash collateral without consent of the [Postpetition Lenders].

- The Debtors or Trustee shall seek, or the entry of, an order to recover from any portions of the [Postpetition Collateral (as defined below)] any costs or

8

expenses of preserving or disposing of such [Postpetition Collateral] under 11 U.S.C. § 506(c).

- Removal or replacement of the Trustee.

- The Trustee commences an action against any of the [Postpetition Lenders] with respect to the Prepetition Obligations including, without limitation, an action seeking to challenge in whole or part the priority or enforceability of the Prepetition Obligations or the validity, priority, perfection of the Prepetition Liens [as defined in the Interim and Final Orders].

- The Trustee fails to provide an Approved Budget [as defined below].

Id. at Exh. A.

21.     Following an Event of Default, and following the provision of notice pursuant to the Interim and Final Orders, the Trustee would lose the right to use Cash Collateral, with the exception of payments on account of the Carve-Out (as defined in the Interim and Final Orders) and payment of allowed expenses actually incurred prior to the date of such notice in accordance with the Approved Budget (as defined below).

22.     The Chapter 7 Trustee believes that these procedures and terms will allow him sufficient use of the Cash Collateral to be able to maintain the Estates' assets in good order and conduct the Sale Process.

**2.      The Prepetition Secured Parties' adequate protection**

23.     Pursuant to 11 U.S.C. §363(c)(2), "The Chapter 7 Trustee may not use, sell, or lease cash collateral . . . unless – (A) each entity that has an interest in such cash collateral consents; or (B) the court, after notice and a hearing, authorizes such use, sale, or lease in accordance with the provisions of this section."

9

24.    The Prepetition Secured Parties have consented to the Chapter 7 Trustee's use of the Cash Collateral pursuant to the terms of the Cash Collateral Arrangement, which include certain adequate protection provisions in favor of the Prepetition Secured Parties.

25.    Pursuant to 11 U.S.C. §§361, 363(c)(2), and 552, the Prepetition Secured Parties are entitled to adequate protection of their interests in the Cash Collateral, in an amount equal to the aggregate diminution in value of such collateral, including without limitation, any such diminution resulting from use by the Chapter 7 Trustee.  Accordingly, the Prepetition Secured Parties are entitled to the adequate protection described in the proposed Interim and Final orders, including the Adequate Protection Liens (as defined in the Interim and Final Orders) and a superpriority administrative expense claim under 11 U.S.C. §507(b).

26.    The Adequate Protection Liens (as defined in the Interim and Final Orders), as well as the proposed claims pursuant to 11 U.S.C. §507(b) to be provided to the Prepetition Secured Parties pursuant to the Interim and Final Orders, shall be limited to the proceeds of unencumbered assets other than the Debtors' equity in the Foreign Subsidiaries.  Such liens and claims shall not attach to or be paid from, *inter alia*, the sale or recoveries on the Prepetition Collateral or the proceeds realized from the sale of the Foreign Subsidiaries in accordance with the Sharing Arrangement, and the Carve-Out (as defined in the Interim and Final Orders).

27.    The Chapter 7 Trustee believes that the adequate protection granted in the proposed Interim and Final Orders is reasonable under the circumstances, and will fairly protect the Prepetition Secured Parties from any diminution in value of the Cash Collateral.  In addition, the Chapter 7 Trustee believes that granting the Prepetition Secured Parties such adequate protection is necessary to induce the Prepetition Secured Parties to consent to the Chapter 7 Trustee's use of the Cash Collateral.  For their part, the Prepetition Secured Parties consent to the

10

Chapter 7 Trustee's use of Cash Collateral solely on the terms set forth in the Interim and Final Orders.

**3.    Analysis**

28.    As described above, the Chapter 7 Trustee has an urgent need for immediate use of the Cash Collateral pending the final hearing on this Motion. The Estates have a de minimis amount of unencumbered cash-on-hand, and the Chapter 7 Trustee needs to be able to store and maintain the Estates' assets, implement the Sale Process, and take the ordinary actions necessary to administer the Debtors' cases.

29.    Absent the ability to use Cash Collateral, the Chapter 7 Trustee will not be able to pay any costs at all – including but not limited to costs associated with the storage and maintenance of assets and with the Sale Process – and ultimately the creditor body will suffer. Accordingly, the Estates would be irreparably harmed without the Chapter 7 Trustee gaining immediate use of the Cash Collateral.

30.    The Chapter 7 Trustee submits that the terms and conditions of the Cash Collateral Arrangement, including the adequate protection provisions, are reasonable under the circumstances and work to the overall benefit of the Estates. Importantly, the Prepetition Secured Parties would not have consented to the Chapter 7 Trustee's use of Cash Collateral without these terms and conditions. In addition, the Chapter 7 Trustee notes that cash collateral orders containing these types of provisions are frequently approved by Courts in this District.

31.    Given the benefits that the Estates would realize, the Chapter 7 Trustee respectfully submits that the Cash Collateral Arrangement meets the applicable standards, and should be approved.

**B.    The Postpetition Credit Facility should be approved**

    **1.    Overview of the Postpetition Credit Facility**

32.    Under the Postpetition Credit Facility, the Postpetition Lenders will provide up to $320,000 to the Chapter 7 Trustee (with $25,000 to be available on an interim basis), to be used in accordance with a certain agreed budget (the "Approved Budget"), a copy of which is attached to the proposed Interim Order.

33.    Specifically, the Approved Budget covers a three and one-half month period, ending on June 28, 2013, and provides, on an accrual basis: a total of $250,000 for the Chapter 7 Trustee's professionals and the Chapter 7 Trustee's commission; $15,000 for payment to a certain former employee/officer of the Debtors whom the Chapter 7 Trustee may seek to engage as a consultant; $18,000 for data room and noticing fees; and $32,000 for storage and other miscellaneous fees and costs associated with maintaining the Estates' assets. The advances made under the Postpetition Credit Facility, all reserved and unpaid budgeted items, and the fees and costs of the Postpetition Lenders allowed pursuant to paragraph 20 of the Interim Order, shall be repaid "off the top" from the gross Sale Proceeds prior to application of the sharing formula set out in the Sharing Arrangement.

34.    The Postpetition Lenders and the Chapter 7 Trustee each believe that the Approved Budget includes all of the expenses that will be incurred during the Sale Process. However, the Trustee has no way to know with any degree of certainty. As such, there is no waiver of a section 506(c) surcharge claim. However, the assertion of such a claim would be an event of default.

35.     The Postpetition Credit Facility will terminate upon the earlier to occur of the conclusion of the time period provided in the Approved Budget (i.e. June 28, 2013), or the consummation of a sale or sales of substantially all of the Estates' assets.

36.     The Chapter 7 Trustee will not be permitted to draw upon the Postpetition Financing unless he has first exhausted the Cash Collateral. Although he is not yet able to determine how much Cash Collateral he will have available, the Chapter 7 Trustee believes that he will very likely need to access the Postpetition Financing in order to properly conduct the Sale Process and maintain the Estates' assets in good condition.

37.     The Postpetition Credit Facility provides for an interest rate of 8% per annum with no additional fees. In his business judgment, the Trustee believes that such proposed rate is reasonable under the circumstances.

38.     The Events of Default listed above in connection with the Cash Collateral Arrangement apply also to the Postpetition Credit Facility. *Inter alia*, the Interim and Final Orders provide, "[I]mmediately upon the occurrence of an Event of Default under the Postpetition Credit Facility or a default by the Chapter 7 Trustee or the Debtors of any of their obligations under the Interim Order [or Final Order] or the Postpetition Credit Facility, without providing any prior notice thereof (A) the Postpetition Lenders may charge interest at the default rates pursuant to the Term Sheet, (B) the Postpetition Lenders shall not have any further obligation to provide financing under the Postpetition Credit Facility, this Interim Order or otherwise, and may, in their sole discretion, terminate all commitments with respect to the Postpetition Credit Facility, (C) declare all Obligations [as defined in the Interim and Final Orders] to be immediately due and payable; (D) freeze monies or balances in the Debtors'

13

accounts, and (E) after the expiration of the Waiting Period [as defined in the Interim and Final Orders] any authorization to use Cash Collateral shall terminate." Interim Order at ¶ 30(a)(ii).

39.     The Postpetition Credit Facility provides that the Postpetition Lenders will receive superpriority claims pursuant to 11 U.S.C. §364(c)(1), and first priority security interests in, and lien on, substantially all of the Estates' assets pursuant to 11 U.S.C. §364(d), excluding causes of action arising under chapter 5 of the Bankruptcy Code and the proceeds thereof but including avoidance actions under sections 549 and related proceeds and recoveries under section 550 of the Bankruptcy Code in respect of the Prepetition Collateral (the "Postpetition Facility Liens" on the "Postpetition Collateral"), subject only to (i) the Carve-Out (as defined in the Interim and Final Orders) and (ii) valid, perfected, enforceable, and non-avoidable liens as of the Petition Date that were senior in priority to the alleged liens securing Prepetition Obligations (the "Permitted Priority Liens").

40.     The Postpetition Lenders will not extend postpetition credit to the Chapter 7 Trustee absent superpriority priming liens pursuant to 11 U.S.C. §364(d) and superpriority claims pursuant to 11 U.S.C. §364(c)(1). In light of the facts and circumstances of these cases, the Chapter 7 Trustee does not believe that he would be able to obtain postpetition financing pursuant to 11 U.S.C. §§364(b) or (c). Due to the very short time frame within which he must act, and the exigencies that he faces, the Chapter 7 Trustee believes that he would not be able to obtain postpetition financing on better terms under section 364(d) – if at all – in time to prevent a precipitous decline in the value of the Estates' assets. Moreover, the Prepetition Secured Parties (which are substantially identical to and/or affiliates of the Postpetition Lenders) have consented to the relief requested in this Motion, but would not consent to the granting of any priming lien to any other third party.

14

## 2.    Disclosures pursuant to Local Rule of Bankruptcy Procedure 4001-2

41.    Local Rule of Bankruptcy Procedure 4001-2 requires a movant to highlight for the Court's scrutiny certain provisions in a proposed financing arrangement. Such provisions include, *inter alia*, "[p]rovisions or findings of fact that bind the estate or other parties in interest with respect to the validity, perfection or amount of the secured creditor's prepetition lien or the waiver of claims against the secured creditor without first giving parties in interest at least seventy-five (75) days from the entry of the order . . . to investigate such matters." See Local Rule of Bankruptcy Procedure 4001-2(a)(i)(B).

42.    The Postpetition Credit Facility includes such a provision. Accordingly, the Chapter 7 Trustee will set out the full text of that provision as it appears in the proposed Interim and Final Orders:

> Unless, within forty-five (45) days after entry of this Interim Order (the "Challenge Period"), the Chapter 7 Trustee commences an adversary proceeding challenging the validity, perfection, priority or enforceability of the Prepetition Liens or seeking to void, avoid, equitably subordinate, or otherwise challenge for any reason the Prepetition Obligations or Prepetition Liens, the Chapter 7 Trustee and the Debtors shall be deemed to stipulate that (i) as of the Petition Date, the allowed outstanding amount of principal and interest under the Prepetition Facility was approximately $20,963,828, plus certain costs and expenses for which reimbursement is owed of approximately $529,189, plus other allowable costs and expenses, without offsets, setoffs or counterclaims against the Prepetition Agent or Prepetition Lenders that could be asserted against the Prepetition Obligations; (ii) the Prepetition Liens constitute valid, enforceable, duly perfected, first-priority liens upon and security interests in the Prepetition Collateral; (iii) the Prepetition Liens are not voidable under the provisions of the Bankruptcy Code or applicable non-bankruptcy law; and (iv) the Prepetition Agent, the Prepetition Secured Parties and their respective officers, directors, employees, advisors and liabilities whatsoever, whether known or unknown, foreseen or discharged by the Chapter 7 Trustee, the Debtors, and the Debtors' estates from any and all claims, causes of action, litigation claims, avoidance claims and any other debts, obligations, rights, suits, damages, expenses, actions, remedies, judgments and liabilities whatsoever, whether known or unknown, foreseen or unforeseen, liquidated or unliquidated, fixed or contingent, matured or unmatured, existing at any time, whether in law, at equity, whether for tort, contract, or otherwise, arising from or related in any way to the Debtors or their respective

15

properties, assets and estates, the Prepetition Obligations, the Prepetition Liens or the Chapter 7 Cases; provided that the Challenge Period with respect to this subparagraph (iv) shall be ninety (90) days after entry of this Interim Order.

Interim Order at ¶ 18.

43.    The Postpetition Credit Facility further provides, "The Chapter 7 Trustee may use up to $25,000 of Cash Collateral and the proceeds available under the Postpetition Credit Facility solely to investigate the Prepetition Liens and Prepetition Obligations.  No portion of the Postpetition Credit Facility, the Postpetition Collateral, the Cash Collateral or the Carve-Out may be used in connection with the initiation or prosecution of any claims, causes of action, objection or other litigation against the Prepetition Secured Parties or the Postpetition Lenders."  Id. at ¶ 17.

### 3.    Applicable authority

44.    Pursuant to 11 U.S.C. §364(d)(1), "The court, after notice and a hearing, may authorize the obtaining of credit or the incurring of debt secured by a senior or equal lien on property of the estate that is subject to a lien only if – (A) the trustee is unable to obtain such credit otherwise; and (B) there is adequate protection of the interest of the holder of the lien on the property of the estate on which such senior or equal lien is proposed to be granted."

45.    Federal Rule of Bankruptcy Procedure 4001 governs the use of postpetition financing and provides that the Court may authorize a trustee to obtain postpetition financing on a final basis after a hearing on at least fourteen days notice, and may authorize a trustee to obtain interim postpetition financing "to the extent necessary to avoid immediate and irreparable harm to the estate pending a final hearing" on less than fourteen days notice.

LEGAL\15572325\7

4.    **Analysis**

46.    Without entering into the Postpetition Credit Facility, the Chapter 7 Trustee will lack the funds to store and maintain the Estates' assets, and conduct the Sale Process. Consequently, without the Postpetition Credit Facility, the Estates will suffer irreparable harm.

47.    Further, because of the expedited need for financing, and the undersecured position of the Prepetition Secured Parties, the Chapter 7 Trustee believes that he would not have time to locate any other, potentially more favorable, Postpetition Credit Facility in time to prevent a precipitous decline in the value of the Estates' assets.

48.    Consequently, the Chapter 7 Trustee respectfully submits that his entering into and obtaining financing under the Postpetition Credit Facility would be in the Estates' best interests.

C.    **The Sharing Arrangement should be approved**

49.    The Sharing Arrangement sets out the manner in which the Sale Proceeds will be apportioned between the Chapter 7 Trustee, the Postpetition Lenders, and the Prepetition Secured Parties.

50.    The Sale Proceeds will be paid first to the Postpetition Lenders, in an amount sufficient to pay the outstanding balance due under the Postpetition Credit Facility, and all accrued and unpaid amounts under the Approved Budget. Second (to the extent that the Sale Proceeds are proceeds of the Prepetition Collateral) the remaining Sale Proceeds will be split on the following basis. With respect to any sale of the Debtors' interests in their Foreign Subsidiaries, the Estates will receive thirty-five percent (35%), and the Prepetition Secured Parties would receive sixty-five percent (65%). With respect to any sale of any other form of

17

Prepetition Collateral, the Estates will receive ten percent (10%) and the Prepetition Secured

Parties would receive ninety percent (90%).

51.     The Sharing Arrangement provides that the proceeds of any unencumbered assets

shall be retained by the Estates and any for distribution that is made to general unsecured

creditors shall be as follows:

- Any portion of the Prepetition Obligations that is not a secured claim shall be a general unsecured claim (the "Deficiency Claim") and be entitled to share pro rata in distributions to general unsecured creditors.

- The pool of general unsecured claims to which distributions shall be made shall include, to the extent allowed, the aggregate of (i) general unsecured claims, (ii) the Deficiency Claim and (iii) claims subject to the Subordination Agreements ("Subordinated Claims") [as defined in the Interim and Final Orders].

- Distributions on account of the Subordinated Claims shall be paid in accordance with the Subordination Agreements following notice and a hearing.

Interim Order at Exh. B.

52.     Importantly, the Sharing Arrangement contains the following provision regarding

the allocation of the funds used to repay the Postpetition Credit Facility:

> Notwithstanding the date of repayment of the Postpetition Credit Facility and the date of the receipt of proceeds of any asset of the Debtors' estates by the Chapter 7 Trustee, the Postpetition Credit Facility shall be deemed to have been repaid from the US Assets [as defined in the Sharing Arrangement] and Foreign Equity Interests [as defined in the Sharing Arrangement] in pro rata proportions so that the repayment of the Postpetition Credit Facility from the gross proceeds realized from the US Assets and Foreign Equity Interests is shared in accordance with the respective values recovered for such assets, with such adjustments as are necessary or appropriate as values are realized.

> For example, if the Debtors' estates realize (a) $3 million from the US Assets and (b) $2 million from the Foreign Equity Interests, then the Postpetition Credit Facility shall be deemed to have been repaid 60% from the US Assets and 40% from the Foreign Equity Interests.

Id.

53.    The Court has the authority to approve the Sharing Arrangement pursuant to section 105 of the Bankruptcy Code, and Federal Rule of Bankruptcy Procedure Rule 9019. Section 105(a) provides that "[t]he court may issue any order . . . that is necessary or appropriate to carry out the provisions of this title."

54.    Rule 9019 grants the Court authority to approve settlements of claims and controversies after notice and a hearing.   The United States Court of Appeals for the Third Circuit has emphasized that "to minimize litigation and expedite the administration of a bankruptcy estate, '[c]ompromises are favored in bankruptcy.'" Myers v. Martin (In re Martin), 91 F. 3d 389, 393 (3d Cir. 1996) (quoting 9 Collier on Bankruptcy ¶9019.03[1] (15th ed. 1993)). The approval of compromises and settlements is committed to the sound discretion of the bankruptcy court.  See, e.g., In re Louise's, Inc., 211 B.R. 798, 801 (D. Del. 1997).

55.    Before approving a settlement under Rule 9019, a court must determine whether "the compromise is fair, reasonable, and in the interests of the estate." In re Marvel Entertainment Group, Inc., 222 B.R. 243, 249 (D. Del. 1998) (quoting Louise's, 211 B.R. at 801). To reach such a determination, the court must assess the value of the claim that is being settled and balance it against the value to the estate of the approval of the settlement. Martin, 91 F.3d at 393. Basic to the process of evaluating proposed settlements is "the need to compare the terms of the compromise with the likely rewards of litigation." TMT Trailer Ferry, 390 U.S. at 425. The TMT rule does not require the Court to hold a full evidentiary hearing before a compromise can be approved.  Rather, the Court's obligation is "to canvas the issues and see whether the settlement 'falls below the lowest point in a range of reasonableness.'" 10 Collier on Bankruptcy, ¶9019.2, 9019-4 (15th ed.) (quoting In re Drexel Lambert Group, Inc., 134 B.R. 493 (Bankr. S.D.N.Y. 1991)).

LEGAL\15572325\7

56.     The Chapter 7 Trustee submits that the Sharing Arrangement would be in the best interests of the Estates.  The Sharing Arrangement would provide the Chapter 7 Trustee with funds for potential distribution to unsecured creditors and, if necessary, to complete his administration of the Estates.  Without these funds and the financing provided hereunder, the unsecured creditors would likely receive no or very little distribution.

57.     Based on the foregoing, the Chapter 7 Trustee respectfully submits that the Court should approve the Sharing Arrangement as being in the best interests of the Estates, and authorize the Chapter 7 Trustee to take any and all actions necessary to implement the Sharing Arrangement.

## Need for Interim approval and scheduling of preliminary hearing

58.     Local Rule of Bankruptcy Procedure 4001-2(b) provides, "When Financing Motions [which include cash collateral and/or post-petition financing motions] are filed with the Court on or shortly after the petition date, the Court may grant interim relief pending review by interested parties . . . .  Such interim relief shall be only what is necessary to avoid immediate and irreparable harm to the estate pending a final hearing."

59.     By a Motion to Shorten filed concurrently with this Motion, the Chapter 7 Trustee is requesting that the Court conduct an expedited preliminary hearing on this Motion and approve (from and after entry of the Interim Order and pending the Final Hearing) the relief requested herein on an interim basis so that the Chapter 7 Trustee may, among other things, maintain the Estates' assets and begin preparing for the Sale Process.  The Chapter 7 Trustee's having interim access to the Cash Collateral and Postpetition Financing is necessary to enable him to protect the Estates' assets from diminution in value and, consequently, would benefit the

creditor body as a whole.  Accordingly, the Chapter 7 Trustee's proposed interim relief is necessary to avoid immediate and irreparable harm.

60.    By the Motion to Shorten, the Chapter 7 Trustee is requesting that the Court schedule an expedited preliminary hearing for consideration of the attached Interim Order on April 10, 2013, at 2:00 p.m., or as soon thereafter as reasonably possible.

### Request for Final Hearing

61.    The Chapter 7 Trustee requests that the Court schedule the Final Hearing for a date as soon as reasonably possible following entry of the Interim Order, but in no event later than twenty (20) days following the entry of such order, and fix a deadline applicable for objections, if any.

### Notice

62.    Notice of this Motion will be given to the following parties or, in lieu thereof, to their counsel, if known, by first class postage-prepaid U.S. mail, electronic mail, and/or hand delivery: (a) the Office of the United States Trustee; (b) the Debtors; (c) the Prepetition Secured Parties; (d) the Postpetition Lenders; (e) the twenty (20) largest unsecured creditors of each Debtor, as listed on the Debtors' Schedules of Assets and Liabilities filed in the Debtors' bankruptcy cases; (f) the Internal Revenue Service; (g) the taxing authorities listed on the Schedule E filed by each Debtor and the taxing authorities that have filed a proof of claim in the Debtors' bankruptcy cases; and (h) all parties that have requested notice pursuant to Bankruptcy Rule 2002 (all together, the "Noticed Parties").  The Chapter 7 Trustee submits that, in light of the nature of the relief requested, no other or further notice need be given.

LEGAL\15572325\7

WHEREFORE, for the reasons set forth herein, the Chapter 7 Trustee respectfully requests that the Court enter an order, in substantially the form attached: (i) granting this Motion on an interim basis; (ii) authorizing the Chapter 7 Trustee, on an interim basis, to use the Cash Collateral, and awarding, on an interim basis the requested adequate protection; (iii) authorizing the Chapter 7 Trustee, on an interim basis, to obtain the Post-Petition Financing; (iv) approving, on an interim basis, the Sharing Arrangement; (v) scheduling a Final Hearing on the Motion and granting all relief on a final basis; and (vi) granting certain related relief, as well as any such additional relief that the Court may deem appropriate.

Dated:  April 9, 2013

COZEN O'CONNOR

Mark E. Felger (No. 3919)
Simon E. Fraser (No. 5335)
1201 North Market Street, Suite 1001
Wilmington, DE  19801
Telephone:  (302) 295-2000
Facsimile:  (302) 295-2013

*Proposed Special Counsel for Jeoffrey L. Burtch, Chapter 7 Trustee*

22